PER CURIAM.
Edgewater Beach Owners Association (Edgewater) appeals a final order of the Florida Land and Water Adjudicatory Commission (FLWAC) dismissing its appeal of an amended development order for lack of standing. We reverse and remand.
On June 8, 1982, the Board of County Commissioners of Walton County (Board) issued a development order approving the construction of Edgewater Beach Condominiums as a development of regional impact (DRI). The order included build-out dates for the contemplated six-phase condominium project with a termination date of June 8, 1992. Phases I and II of the project had been completed when the original developer went bankrupt. Thereafter, appellee KPM, Ltd. (KPM) became the successor in title to the undeveloped land. On September 28, 1992, three and one-half months after the termination date of the original development order, KPM submitted a “Notification for Proposed Change,” requesting an extension of the build-out dates for Phases III through VI and various other design modifications. The notification for proposed change also reflected plans to utilize a stormwater retention pond located partially within Edge-water’s property to capture excess stormwa-ter runoff draining from KPM’s land.
The Board amended its original development order, extended the expiration date of the order until January 1, 1999, extended the build-out dates for the remaining four phases of the project, and approved KPM’s proposed design modifications. Edgewater filed a petition with the FLWAC appealing the amended development order. pursuant to Section 380.07(2), Florida Statutes (1991). The FLWAC determined that Edgewater did not have standing to appeal the amended development order and dismissed the administrative appeal.
Section 380.07(2) provides that the state land planning agency, regional planning agency, and the “owner or developer of the property affected” may appeal an order concerning a DRI. The full import of this statutory provision as it applies to the question of Edgewater’s standing to appeal the amended development order may be best explained with reference to this court’s prior opinions construing Section 380.07(2). In Caloosa Property Owners Association, Inc. v. Palm Beach County Board of County Commissioners, 429 So.2d 1260 (Fla. 1st DCA), rev. den., 438 So.2d 831 (Fla.1983), an association of adjoining land owners was denied standing to appear before the FLWAC to challenge an approved DRI. In affirming the denial of standing to the homeowners’ association, this court’s decision was grounded on two bases:
(1) While an owner of property to be developed has standing under the statute, the term “owner” in Section 380.07(2), Florida Statues, refers to the owner of the property on which the DRI is to be located, as opposed to the owners of adjoining property; and
(2) The DRI review process embodied in Chapter 380 is intended primarily for two groups, developers and owners on the one hand and governmental planners and permitting authorities on the other hand. Accordingly, the court concluded that Chapter 380 does not provide a forum to hear the complaints of adjoining land owners.[1]
In Londono v. City of Alachua, 438 So.2d 91 (Fla. 1st DCA 1983), the owners, who were also denied standing, were the owners whose property was included in the proposed DRI but on whose property no development was to occur. Thus, the issue presented in Londono was:
whether appellants, owners of the lands within the designated DRI but not proposed for new development, have Chapter 380 standing to appeal to the Florida Land and Water Adjudicatory Commission....
Id. at 92. In Londono, the inclusion of the appellants’ property in the DRI was merely a *543 gratuitous gesture, included solely to assist in assessing the regional impact of the development as a whole. Under a literal application of Caloosa, the Londono appellants would have standing because their property was located within the bounds of the DRI. Since, however, the appellants’ property was not properly a part of the proposed development, the Londono panel determined to narrow the “standing” class enunciated in Caloosa, thereby disqualifying “owners” of land included in the DRI for purposes other than development. Londono, 438 So.2d at 91. In essence, the Londono appellants were nothing more than owners of property adjoining the area of development.
We find, under Londono, that the determination of what constitutes an “owner” for purposes of Section 380.07(2) may not be made without reference to the question of what constitutes “development” under Chapter 380. In the present case, KPM’s amended development plan would make use of a stormwater retention pond situated partially on Edgewater’s property. Furthermore, the use of Edgewater’s retention pond to contain stormwater runoff under KPM’s amended plan constitutes “development” under Chapter 380. Such a conclusion is compelled by Section 380.04, Florida Statutes, which provides in pertinent part:
(1) The term “development” means the carrying out of any building activity or mining operation, the making of any material change in the use or appearance of any structure or land, or the dividing of land into three or more parcels.
(2) The following activities or usages shall be taken for the purposes of this chapter to involve “development”, as defined in this section:
[[Image here]]
(b) A change in the intensity of use of land, such as an increase in the number of dwelling units in a structure or on land or a material increase in the number of businesses, manufacturing establishments, offices, or dwelling units in a structure or on land.
(c) Alteration of a shore or bank of a sea coast, river, stream, lake, pond, or canal, ....
Appellant’s petition alleges that KPM’s amended plan for development would utilize appellant’s retention pond for excess storm-water drainage from KPM’s proposed development. It is not clear from appellant’s petition whether the stormwater runoff generated by KPM’s amended plan would exceed that contemplated by the original development plan, but the facts alleged indicate that KPM’s plan will be in excess of that which presently exists. We hold that the petition is sufficient under the statute to allege “development” and appellant’s standing as an affected land owner. Appellant is an “owner” whose land (retention pond) would be “developed” by appellee’s building activities. That is, the “intensity” of the use of the retention pond would increase beyond its current use under KPM’s plan.[2]
On another point, we find it unnecessary to consider whether Edgewater may have an effective means of redress in circuit court under the “reasonable use” doctrine articulated in Westland Skating Center, Inc. v. Gus Machado Buick, Inc., 542 So.2d 959 (Fla. 1989). The availability of an alternate remedy is not relevant to the question whether Edgewater has standing as an “owner” under section 380.07(2), Florida Statutes.
In conclusion, we find that appellant Edge-water is an “owner” under the terms of Section 380.07(2), and therefore has standing to appeal the amended development order rendered by the Board of County Commissioners.
REVERSED and REMANDED for further consistent proceedings.
BOOTH, MINER and LAWRENCE, JJ., concur.

. Citing Suwanee River Area Council Boy Scouts of America v. State, Department of Community Affairs, 384 So.2d 1369 (Fla. 1st DCA 1980).

. Because our decision addresses only the standing issue, we do not reach the question of whether it is proper, under Chapter 380, to propose an "amendment” to a DRI which has expired, or whether a proposal such as that presented by KPM should be regarded as an original application for development approval.